Filed 3/6/14  In re H.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.H., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E058451 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1200314) |
| v. | OPINION |
| C.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Lauren Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant C.H. (Father) appeals from the juvenile court's jurisdictional findings as to his one-year-old son Z.H. and two-year-old son H.H.[1] He contends that there was insufficient evidence to support the juvenile court's order sustaining the petition as to him under Welfare and Institutions Code section 300, subdivision (b).[2] We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Riverside County Department of Public Social Services (DPSS) in June 2012 after an immediate response referral was received alleging that Mother had given birth to Z.H. at 35 weeks gestation and had tested positive for methamphetamine. Mother admitted that she had used methamphetamine the day before Z.H.'s birth. Mother also admitted to a long history of abusing drugs and reported that she had never completed or participated in any substance abuse treatment programs. Z.H.'s meconium tested positive for amphetamine and methamphetamine.

Mother had two other children with two different men, and another young child with Father. Mother claimed that Father was unaware of her drug use. She also stated that Father was arrested on June 15, 2012, for possession of firearms as a probationer and

_____

[1] A.S. (Mother) is not a party to this appeal.

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

was in jail.  The maternal grandmother, who assists Mother with childcare, also stated that neither she nor Father were aware of Mother's drug use.

Father's arrest report indicated that following a probationary search of the residence Mother shared with Father, Father had been arrested for several charges related to felon in possession with firearms, automatic weapons, and ammunition.  The police report also noted that a substantial amount of methamphetamine (about 157 grams), unsecured firearms (some of which were stolen), 47 rounds of live ammunition, and drug paraphernalia were found in the home.  The home also contained indicia of drug sales, such as packaging, pay-owe sheets, a functioning digital scale with methamphetamine on it, baggies containing methamphetamine inside, and a money bag.[3]  Father declined to give any statements concerning his arrest, the circumstances in the home that led to his arrest, and the pending dependency proceeding.  He denied any knowledge of Mother's drug use as well as supplying her with methamphetamine.  Father was on formal probation following his conviction for possession of a controlled substance.  Mother claimed that she was unaware that the home contained drugs, and denied that Father supplied her with methamphetamine.  The maternal grandmother also asserted that she

---

[3]  In an earlier contact with Father during a traffic stop at 12:32 a.m. on June 15, 2012, Father appeared extremely nervous and was found with a large bundle of cash in his front pocket as well as three active cellular telephones with text messages which appeared to be orders for drugs.  In past contacts with Father, officers also found Father to be in possession of at least three cellular telephones and text messages referencing drug sales.  Additionally, Father was observed to drive to various houses in the city, stop for extremely short periods of time, and leave without dropping off or picking up anyone.  Law enforcement concluded Father's actions to be consistent with drug transportation and sales.

was not aware of the circumstances that led to Father's arrest or any illegal activities in the family home.

Mother and Father had a prior history with child protective services involving allegations of domestic violence in March 2012. In that incident, it was reported that Mother showed up at her oldest child's preschool with bruises all over her face when she was about five months pregnant. Mother had sunglasses on, scrapes on her forehead, bruises on the bottom of her chin, and bruises under her left eye. Mother's oldest child stated that Father had beaten her up. The disposition on the allegation was found inconclusive because DPSS was unable to make contact with the family and the child never returned to the school. Father later reported that he took the child out of the school after the incident because the teacher had no "'right to interrogate kids like that.'" Mother denied domestic violence in the relationship.

All four children were taken into protective custody on June 20, 2012.

On June 22, 2012, a petition was filed on behalf of the children pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). In regard to Father, the petition alleged that Father knew or reasonably should have known that Mother was abusing drugs while pregnant and caring for his older child, H.H., and failed to intervene on the child's behalf (b-3); that Father and Mother had a history of engaging in domestic violence (b-4); that Father had a criminal history and was arrested on June 15, 2012 (b-5); that Father was not a member of the household and had failed to provide his children with adequate food, clothing, shelter, medical treatment, support, and/or

4

protection (b-8); and that Father was currently incarcerated with an unknown release date and is unable to provide care and support for his children (g-3).[4]

The detention hearing was held on June 27, 2012. Father was present in custody. Mother was also present. The children were formally removed from each of their respective fathers, and placed in Mother's custody. Father was provided with services pending further proceedings.

The social worker recommended that the allegations in the petition be found true, that the children be declared dependents of the court, and that Mother and Father be provided with reunification services. When the social worker attempted to interview Father while he was in custody on July 9, 2012, Father again refused to talk to the social worker about the allegations and services DPSS could offer him. The social worker eventually spoke to Father on July 18, 2012. Father believed that he did not do anything wrong with regard to neglecting or maltreating the children and declined to comment about the criminal charges against him or his criminal record. He denied that there had ever been domestic violence issues between he and Mother and explained that his relationship with Mother was good. He also denied current or recent substance abuse, but stated that he was willing to do whatever is recommended in his case plan. However, about three months later, Father still had not started his services and had failed to randomly drug test as directed by DPSS.

---

[4] DPSS later recommended striking allegations b-8 and g-3.

5

The contested jurisdictional/dispositional hearing was held on March 11, 2013. Mother waived her rights and submitted to the allegations in the petition based on the social workers' reports. Father, who was unable to stay at the hearing due to work, did not present any affirmative evidence, but presented argument as to the allegations against him.[5] Following arguments from counsel, the juvenile court found allegations b-1 and b-2 involving Mother's controlled substance abuse true and allegations b-3 and b-5 as to Father true and declared the children dependents of the court.[6] Physical custody of the children was retained with Mother but formally removed from Father. Father and Mother were offered reunification services and ordered to participate in their court-approved case plans. This appeal followed.

II

DISCUSSION

Father challenges the jurisdictional findings, arguing that there is insufficient evidence to support the juvenile court's jurisdiction under subdivision (b) of section 300 as to him. As explained below, we conclude that his challenges fail because there is overwhelming evidence of the allegations against Mother to establish the court's jurisdiction.

---

[5] Father did not challenge disposition, and in fact, his counsel argued that Father was not seeking custody at that time or asking for the children to be in his care.

[6] The court found untrue allegation b-4 regarding a history of domestic violence between Mother and Father.

6

The petitioner in a dependency proceeding must prove by a preponderance of evidence that the child who is the subject of the petition comes under the juvenile court's jurisdiction. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.) We review jurisdictional findings under the substantial evidence standard. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574-575; *In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Under this standard, we determine whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion of the trier of fact. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) All evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can reasonably be deduced from the facts, we cannot substitute our own deductions for those of the trier of fact. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

Generally, to acquire jurisdiction under subdivision (b) of section 300, the juvenile court was obliged to find that the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result" of specified forms of parental neglect, including substance abuse, physical abuse, and failure to protect the child. Here, the juvenile court made findings against Father and Mother, namely, that the children were placed at a substantial risk of harm by Mother's substance abuse and Father's knowledge of Mother's substance abuse and failure to intervene, and Father's criminal history and arrest for substance abuse and firearm charges. Father argues that there was insufficient evidence to support the findings against him. For the reasons explained below, Father's attack on the juvenile court's jurisdiction fails in view of

7

substantial evidence of the allegations against Mother. Indeed, Mother admitted the allegations against her.

To secure jurisdiction over the child under section 300, the juvenile court was not obliged to make jurisdictional findings against both Father and Mother. Because the focus of the statutory scheme governing dependency is the protection of children, "the minor is a dependent if the actions of *either parent* bring [him or her] within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [italics added], disapproved on another issue in *In re Shelley J.*, *supra*, 68 Cal.App.4th 322, 328.) The agency "is not required to prove two petitions, one against the mother and one against the father, in order for the court to properly sustain a petition [pursuant to § 300] or adjudicate a dependency." (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.) "A petition is brought on behalf of the child, not to punish the parents. [Citation.] The interests of both parent and child are protected by the two-step process of a dependency proceeding, with its separate adjudication and disposition hearings. Thus, when [the department] makes a prima facie case under section 300 by proving the jurisdictional facts at the adjudication hearing, it is not improper for the court to sustain the petition; not until the disposition hearing does the court determine whether the minor should be adjudged a dependent." (*Ibid.*; see also *In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)

Here, Father does not challenge the jurisdictional findings based on Mother's conduct, and there is more than substantial evidence to support jurisdiction of the

8

children based on Mother's conduct alone. *In re I.A.* (2011) 201 Cal.App.4th 1484 is instructive. In that case, the jurisdictional allegations included mother's drug abuse, domestic violence between the parents, and the parents' criminal histories. (*Id.* at p. 1488.) The father there also challenged the jurisdictional findings based on his conduct, but not the findings based on the mother's conduct. The court dismissed the appeal as moot because the father's "contentions, even if accepted, would not justify a reversal of the court's jurisdiction[]." (*Id.* at pp. 1487-1488.) The court explained: "[I]t is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances." (*Id.* at pp. 1491-1492.)

As DPSS established jurisdiction based on Mother's substance abuse, the juvenile court properly found that the children came within the jurisdiction of section 300, subdivision (b). (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1491-1492.) Accordingly, because Father does not challenge the sufficiency of the evidence to support the jurisdictional allegations as to Mother, the juvenile court properly exercised jurisdiction

over the children even if Father's conduct was not an independent basis for jurisdiction. (See, e.g., *In re Maria R.* (2010) 185 Cal.App.4th 48, 60, disapproved on another ground in *In re I.J.* (2013) 56 Cal.4th 766, 780-781; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554; *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

Father acknowledges that jurisdiction over a child is established if the conduct of *either* parent places the child at risk under the criteria of section 300. Citing *In re Drake M.* (2012) 211 Cal.App.4th 754, he argues nonetheless that this court should reach the issue because "the outcome of this appeal is the difference between father being an 'offending' parent versus a 'non-offending' parent," and that "[s]uch a distinction may have far reaching implications with respect to future dependency proceedings in this case and father's parental rights."

The general rule notwithstanding, there are some circumstances in which a reviewing court may exercise its discretion to address additional jurisdictional findings as to one parent. These include: (1) when the finding serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454); (2) when the finding could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494); and (3) when the finding could have other consequences for the appellant, beyond dependency jurisdiction (*id.* at p. 1493). (*In re Drake M.*, *supra*, 211 Cal.App.4th at pp. 762-763.) In *In re Drake M.*, the court exercised its discretion to consider the custodial father's challenge to jurisdiction because he was seeking custody

of the child and the outcome of the appeal would mean the difference between the father being an "offending" versus a "non-offending" parent, a distinction that could affect the father's custody rights under section 361, subdivision (c)(1) [When there is clear and convincing evidence that a child would be in substantial danger if returned home, the "court shall also consider, as a reasonable means to protect the [child], allowing a nonoffending parent or guardian to retain physical custody . . . ."]. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)

Here, unlike in *In re Drake M.*, neither Father nor the record suggest any "far reaching implications" of the section 300, subdivision (b) allegations justifying our discretionary review of that issue. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.) In fact, Father does not suggest "a single specific legal or practical consequence" of the section 300, subdivision (b) finding. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1493.) General allegations that the findings could impact future court orders are insufficient; the parent must identify specific legal or practical consequences arising from the dependency findings. (*Ibid*.) The record does not suggest any such consequence. For instance, Father is not presently at risk of having the juvenile court take jurisdiction over another child in the future. (See *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [Alternative grounds for jurisdiction considered; mother had another child who was not the subject of the dependency proceedings.].) Moreover, Father has not challenged any of the dispositional orders, nor has he identified any orders resulting from the true finding he attempts to challenge that adversely affect him. Because Father has not established any

11

actual or threatened prejudice from the jurisdictional finding he seeks to challenge, we decline to exercise our jurisdiction to review it. (*In re I.A.*, supra, 201 Cal.App.4th at pp. 1493-1495.)

In any event, were we to consider the merits of Father's contentions, we would hold that substantial evidence supported the juvenile court's jurisdictional finding as to Father. Contrary to Father's urging, the record shows that Father had a history of abusing controlled substances and a history of sales of controlled substances. Father was on formal probation for illegal possession of a controlled substance, and was arrested on June 15, 2012, for possession of controlled substances with a firearm; possession, sale or transportation of a controlled substance; firearm and ammunition possession; receiving stolen property; and violating probation. The record also shows that Father shared a residence with Mother, and that following a probation search of that residence, about 157 grams of methamphetamine as well as numerous unsecured firearms and ammunition were found in the residence. The search also revealed numerous indicia of drug sales as well as drug paraphernalia located in Mother and Father's bathroom and kitchen. Moreover, a search of Father's person revealed indicia that he was involved in drug sales and transportation. Although Father and Mother claimed otherwise, the record sufficiently shows that Father knew of Mother's substance abuse and failed to intervene. The juvenile court necessarily found Father and Mother's denial as to Father's knowledge concerning Mother's drug abuse incredible. We remind Father that all evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can

12

reasonably be deduced from the facts, we cannot substitute our own deductions for those of the trier of fact. (*In re John V.*, *supra*, 5 Cal.App.4th 1201, 1212.)

The evidence here was sufficient to sustain the allegations under section 300, subdivision (b), that Father knew of Mother's substance abuse and failed to intervene and that Father had a criminal history and was recently arrested for weapons and drug-related offenses thereby placing the children at a substantial risk of harm.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


HOLLENHORST
J.


McKINSTER
J.

13